OPINION
{¶ 1} This appeal is brought by the State pursuant to Crim.R. 12(K) and R.C. 2945.67 from an order of the court of common pleas sustaining a defendant's Crim.R. 12(C)(3) motion to suppress evidence.
 {¶ 2} Defendant, Eric Waggoner, was arrested on an outstanding warrant on May 25, 2005, by two Dayton police officers. Waggoner was one of several men whose conduct the officers were then investigating on suspicion of drug activity.
 {¶ 3} Waggoner and his companions were in a car when the officers first approached them. After their identities were determined and the warrant for Waggoner's arrest on unrelated criminal activity was discovered, Waggoner was ordered out of the car and placed under arrest.
 {¶ 4} One of the two arresting officers, Shawn Smiley, saw a cell phone and a jacket on the seat of the car where Waggoner had sat. Officer Smiley asked Waggoner if those items were his and Waggoner replied that they were. Officer Smiley next asked Waggoner "if there was any other property (of his) in the vehicle." (T. 9). Waggoner replied that there was a gun in the vehicle. Id. A search produced a handgun in the vehicle near the seat where Waggoner had sat.
 {¶ 5} Waggoner was charged by indictment with a violation of R.C. 2923.12(A)(2), carrying concealed weapons. He moved to suppress evidence of the gun police seized and his statements concerning it. The trial court refused to suppress evidence of the gun but did order evidence of Waggoner's statement concerning the gun suppressed. The trial court reasoned that because the officers were investigating suspected drug activity, which often involves guns, the question the officer asked was reasonably likely to elicit the incriminating response Defendant gave. Therefore, per Rhode Island v. Innis (1980), 446 U.S. 291,100 S.Ct. 1682, 64 Led. 297, prior Miranda warnings were required, and because the warnings were not given, evidence of Waggoner's statement concerning the gun must be suppressed.
 {¶ 6} The State filed a timely notice of appeal, and presents a single assignment of error.
 ASSIGNMENT OF ERROR {¶ 7} "THE TRIAL COURT IMPROPERLY SUPPRESSED WAGGONER'S ADMISSION OF POSSESSION OF THE GUN BECAUSE OFFICER SMILEY COULD NOT HAVE KNOWN THAT HIS QUESTION TO WAGGONER REGARDING OTHER PROPERTY WAS REASONABLY LIKELY TO ELICIT AN INCRIMINATING RESPONSE FROM WAGGONER."
 {¶ 8} Defendant Waggoner had been placed under arrest and was unquestionably in custody when Officer Smiley asked him whether he had any property in addition to the cell phone and jacket in the vehicle. In that circumstance, any police interrogation must be preceded by Miranda warnings and the subject's waiver of the rights those warnings involve. Miranda v. Arizona (1966),384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The issue presented is whether Officer Smiley's question constituted a form of police interrogation.
 {¶ 9} In Innis, the Supreme Court pointed out that in order to constitute "interrogation" the police conduct "must reflect a measure of compulsion above and beyond that inherent in custody itself." Id., at 300. The Supreme Court further stated:
 {¶ 10} "That is to say, the term `interrogation' underMiranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that theMiranda safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." Id., at 301-302 (Emphasis in the original).
 {¶ 11} The defendant in Innis was arrested following an armed robbery and was given Miranda warnings and he invoked his rights to speak with a lawyer. While transporting him to the police station, and referring to a sawed-off shotgun used in the robbery that had not been found, one of the officers stated that there were "a lot of handicapped children running around in this area" because a school for such children was nearby, and "God forbid one of them might find a weapon with shells and they might hurt themselves." With that, the suspect insisted on showing the officers where he had concealed the shotgun. He subsequently moved to suppress that evidence. The trial and appellate courts ruled against him.
 {¶ 12} On review, the Supreme Court held that the statements the officers made were not ones which they should have known were reasonably likely to elicit an incriminating response. There was no express questioning, and nothing in the record indicated that the officers were aware that the defendant was particularly susceptible to an appeal to his conscience concerning the safety of handicapped children, or that he was unusually disoriented when the statements were made. Though some "subtle compulsion" was present, and while the existence of compulsion depends on the subject's perceptions, it must also be shown that the subject's incriminating response was the product of words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response, which was not shown.
 {¶ 13} Innis expressly excluded words or actions on the part of police normally attendant to arrest and custody from the concept of "police interrogation." In that connection, Officer Smiley testified that he asked Defendant Waggoner if he had other property in the car "[b]ecause he was going to jail on the warrant" and would wish to have his property when he was booked-in. (T. 9-10). Routine booking questions have been held to be an exception to the rule of Miranda. Pennsylvania v. Muniz
(1990), 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528. Officer Smiley also testified that when he asked the question he had not seen any weapons and knew nothing about a gun. (T. 10).
 {¶ 14} In its Decision and Entry of August 25, 2005 suppressing evidence of Defendant's incriminating statement, the trial court stated: "this court is convinced the statement was voluntary." If it was voluntary, Defendant's statement could not have been a product of coercive police conduct above and beyond the compulsion inherent in police custody, which is the focus of an Innis inquiry. Even though the effect of coercive police conduct is not necessarily avoided by prior Miranda warnings,Dickerson v. United States (2000), 530 U.S. 428,120 S.Ct. 2326, 147 L.Ed.2d 405, it does not follow that a question asked without the prior warnings necessarily portrays coercive police conduct. Per Innis, it must be found that the officer who asked it should have known that the question was reasonably likely to elicit an incriminating response. Police officers are not responsible for unforeseeable incriminating responses. Id.
 {¶ 15} The trial court did not reject Officer Smiley's testimony for lack of credibility. Rather, the court found that the question about other property the officer asked was "reasonably likely to elicit an incriminating response from the defendant" (T. 39) per Innis, and therefore was improper absentMiranda warnings. That finding misstates the applicable standard, which is whether the officer should have known that the question was reasonably likely to elicit an incriminating response. Id. By focusing on the officer's conduct and not merely the nature of the question, the Innis standard corresponds to the principal purpose of the exclusionary rule, which is "discouraging lawless police conduct." Terry v. Ohio
(1968), 392 U.S. 1, 12, 20 L.Ed.2d 889, 88 S.Ct. 1868. The trial court's analysis departed from that focus when it stated that the issue presented is "not a question of the subjective intent of the police officer." (T. 39). Necessarily, it is when the court must determine what the officer should have known.
 {¶ 16} The court nevertheless addressed that question, if only indirectly, when it found that because the officers were investigating suspected drug activity, which often involves guns, whether Defendant Waggoner had a gun or other weapon in the car was a matter implicit in the question Officer Smiley asked.
 {¶ 17} In connection with an officer's authority under the Fourth Amendment to conduct a Terry pat-down, the Ohio Supreme Court has held that "[t]he right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed." State v.Evans (1993), 67 Ohio St.3d 404, 413. It does not necessarily follow, however, that upon being asked what property he has with him such a suspect is likely to say he had a gun. Statements against one's penal interest are not ordinarily made, and a suspect's natural disinclination to admit he has a gun is an element of the rationale underlying the weapons pat-down thatTerry authorizes.
 {¶ 18} The question that Officer Smiley asked did not expressly refer to a gun or other weapon as "property" Defendant Waggoner might have in the car in which he had been seated before he was arrested. The question was general in its scope and followed a prior inquiry specifically concerning the cell phone and jacket Officer Smiley saw. Those articles were not weapons or contraband, and that fact forms the context in which Officer Smiley's question was asked. Officer Smiley's further inquiry reasonably pertained to any other non-criminal articles Defendant might have had in the same place. In addition, it was asked not in the course of an investigation of suspected drug activity but in connection with Defendant's arrest on an unrelated warrant.
 {¶ 19} In her dissenting opinion, Judge Donovan quotes from the transcript of Officer Smiley's testimony in which he said: "I think I asked him if there was a gun in the car." (T. 19). That contradicts Officer Smiley's several other statements that his question was merely about "other property" and that Defendant responded that a gun was inside. (T. 9, 10, 18, 19). The trial court expressly found, both orally at the conclusion of the hearing (T. 27) and in its written Decision of August 25, 2005, that Officer Smiley's question went to property and not to a gun. Indeed, the court's finding that Defendant's statement was voluntary seems intended to reject any suggestion that a question about a gun was asked. We have no reason to depart from the trial court's express finding of fact.
 {¶ 20} On this record, there is no basis to find that when Officer Smiley asked his question he should have known that it would elicit the incriminating response Defendant gave. The response was an unforeseeable result of the question, which was general in scope and neutral in nature and did not "reflect a measure of compulsion above and beyond that inherent in the custody itself." Innis, at 300. Therefore, prior Miranda
warnings were not required.
 {¶ 21} The assignment of error is sustained. The suppression order from which the appeal was taken will be reversed and vacated, and the case will be remanded for further proceedings.
Wolff, J., concurs.
Donovan, J., dissents.
 FINAL ENTRY
Pursuant to the opinion of this court rendered on the _________ day of ____________, 2006, the judgment of the trial court is Reversed and the matter is Remanded to the trial court for further proceedings consistent with the opinion. Costs are to be paid as provided in App.R. 24.