[Cite as *State v. Hoskins*, 197 Ohio App.3d 635, 2012-Ohio-25.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

THE STATE OF OHIO,                                     :

    Appellant,                                        : C.A. CASE NO. 24711

v.                                                     : T.C. NO.   2011CR190

HOSKINS,                                               : (Criminal appeal from
                                       Common Pleas Court)

    Appellee.                                         :

                                                       :

. . . . . . . . . .

**O P I N I O N**

Rendered on the  **6th**  day of  **January** , **2012**.

. . . . . . . . . .

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Kirsten A. Brandt and Laura M. Woodruff, Assistant Prosecuting Attorneys, for appellant.

D.K. Rudy Wehner, Montgomery County Public Defender, and Charles L. Grove, Assistant Public Defender, for appellee.

. . . . . . . . . .

DONOVAN, Judge.

{¶ 1}  Plaintiff-appellant, the state of Ohio, appeals from a decision of the Montgomery County Court of Common Pleas sustaining defendant-appellee's, Darryl E. Hoskins Jr.'s, motion to suppress, filed on March 8, 2011. A hearing was held on the motion on April 28, 2011. On June 22, 2011, the trial court issued a written decision sustaining the motion. The state filed a timely notice of appeal with this court

on June 29, 2011. For the following reasons, the judgment of the trial court is affirmed.

I

{¶ 2} The incident that forms the basis for the instant appeal occurred on January 14, 2011, at approximately 7:25 p.m., when Detective Chad Knight of the Dayton Police Department observed a small four-door sedan drive past him in the parking lot of a Taco Bell restaurant located on Salem Avenue in Dayton, Ohio. Detective Knight was performing "unmarked reconnaissance" of the area as part of his assignment as a member of the Community Initiative to Reduce Gun Violence Task Force ("CIRGV"). The CIRGV Task Force is a multijurisdictional unit consisting of deputies from the Montgomery County Sheriff's Office, the Dayton Police Department, the Trotwood Police Department, the Montgomery County Prosecuting Attorney's Office, and the FBI Street Task Force to help reduce gun, gang, and drug violence in Montgomery County. Detective Knight testified that he was initially parked in the Taco Bell lot in order to observe a nearby business named Gina's Liquor, known for being a local gang hangout and a high-crime area where violence was prevalent.

{¶ 3} As the sedan backed out in front of him and headed out of the Taco Bell parking lot, Knight observed that the driver of the vehicle pulled out of the lot very quickly and did not signal his turn onto the street. Knight also testified that the small sedan was loaded down with several passengers. He began following the sedan. Because his unmarked vehicle was not equipped with a police computer, Knight radioed the sedan's license-plate number to nearby uniformed officers for

identification. Dayton Police Officers Alex MacGill and Dustin Phillips entered the license-plate number into their police computer. Officer Phillips testified that a check of the license-plate number revealed that the sedan had been reported as stolen, and he immediately so informed Detective Knight.

{¶ 4} Moments later, the sedan was stopped and surrounded by several police cruisers. Multiple officers approached the sedan and removed the five occupants of the vehicle. At the time he was removed from the sedan, defendant-appellee Hoskins was located in the rear passenger seat directly behind the driver. Officer Phillips testified that he removed Hoskins from the sedan and laid him facedown on the ground with his feet pointed towards the vehicle. All four doors of the sedan were open at this point. While Hoskins was lying on the ground, Officer MacGill removed the front-seat passenger from the sedan on the opposite side of the vehicle. Officer MacGill testified that before he patted the passenger down, he stated in a "loud, controlling voice," "[D]o you have guns or knives on you."

{¶ 5} Officer MacGill's inquiry prompted Hoskins to roll over, look up at Officer Phillips, and acknowledge that he had a handgun in his pocket. Officer Phillips testified that he removed a .38-caliber handgun from Hoskins's front pants pocket. Hoskins had not been Mirandized when he informed Officer Phillips that he had a handgun in his possession.

{¶ 6} Hoskins was subsequently arrested and charged with carrying a concealed weapon and improperly handling a firearm in a motor vehicle. At his arraignment on March 17, 2011, Hoskins stood mute, and the trial court entered a plea of not guilty on his behalf. Hoskins filed a motion to suppress on March 8, 2011.

After a hearing held on April 28, 2011, the trial court ordered the parties to submit posthearing briefs. On June 22, 2011, the trial court issued a decision sustaining Hoskins's motion to suppress.

{¶ 7} It is from this decision that the state now appeals.

II

{¶ 8} The state's sole assignment of error is as follows:

{¶ 9} "Hoskins' statement to police about having a gun was admissible in the absence of *Miranda* warnings."

{¶ 10} In its sole assignment, the state contends that the trial court erred by sustaining Hoskins's motion to suppress and finding that he was subjected to a custodial interrogation without the benefit of *Miranda* warnings. Specifically, the state argues that the trial court erred when it found that Officer MacGill should have known that his question to the front-seat passenger regarding weapons was reasonably likely to elicit an incriminating response from Hoskins.[1]

{¶ 11} In regard to a motion to suppress, " 'the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.' " *State v. Hopfer* (1996), 112 Ohio App.3d 521, 548, quoting *State v. Venham* (1994), 96 Ohio App.3d 649, 653. The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac,* Montgomery App. No. 20662,

---

[1] We note that the state does not contest the trial court's conclusion that the "public safety exception" to *Miranda* was inapplicable to the instant case. We also note that the state essentially conceded during oral arguments on November 29, 2011, that the police officers did not have a reasonable, articulable suspicion that the occupants of the sedan were armed.

2005-Ohio-3733, citing *State v. Retherford* (1994), 93 Ohio App.3d 586. Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. Id.

{¶ 12} The Fifth Amendment to the United States Constitution provides that "[n]o person * * * shall be compelled in any criminal case to be a witness against himself." "The Fifth Amendment privilege against compulsory self-incrimination 'protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.' " *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty.* (2004), 542 U.S. 177, 190, 124 S.Ct. 2451, 159 L.Ed.2d 292, quoting *Kastigar v. United States* (1972), 406 U.S. 441, 445, 92 S.Ct. 1653, 32 L.Ed.2d 212; *Ohio v. Reiner* (2001), 532 U.S. 17, 20, 121 S.Ct. 1252, 149 L.Ed.2d 158. "The right to *Miranda* warnings is grounded in the Fifth Amendment's prohibition against compelled self-incrimination." *State v. Strozier*, 172 Ohio App.3d 780, 2007-Ohio-4575, ¶ 16, citing *Moran v. Burbine* (1986), 475 U.S. 412, 420, 106 S.Ct. 1135, 89 L.Ed.2d 410.

{¶ 13} A suspect who volunteers information, and who is not even asked any questions, is not subject to a custodial interrogation and is not entitled to *Miranda* warnings. *State v. McGuire* (1997), 80 Ohio St.3d 390, 401, citing *State v. Roe* (1989), 41 Ohio St.3d 18, 22. In other words, "*Miranda* does not affect the admissibility of '[v]olunteered statements of any kind.' " Id., citing *Miranda v. Arizona* (1966), 384 U.S. 436, 478; *State v. Montgomery*, Montgomery App. No. 23870, 2010-Ohio-5047, ¶ 15.

{¶ 14} Conversely, Hoskins had been removed from the sedan and placed, facedown, on the ground with his hands behind his back by Officer Phillips. Under these circumstances, a reasonable person would not have felt free to leave. Additionally, it is very doubtful that any of the police officers present would have allowed Hoskins to leave. Accordingly, Hoskins was in custody for the purposes of *Miranda*. Thus, any police interrogation should have been preceded by *Miranda* warnings and the subject's waiver of the rights those warnings involve. The issue presented is whether Officer MacGill's question regarding the presence of weapons constituted a form of police interrogation that he should have known was reasonably likely to elicit an incriminating response from Hoskins, who was located nearby on the other side of the vehicle.

{¶ 15} " 'Interrogation' includes express questioning as well as 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.' " *Strozier,* 172 Ohio App.3d 780, 2007-Ohio-4575, 876 N.E.2d 1304, at ¶ 20, quoting *Rhode Island v. Innis* (1980), 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297. "Interrogation" must reflect "a measure of compulsion above and beyond that inherent in custody itself." *Innis,* 446 U.S. at 300. "Police officers are not responsible for unforeseeable incriminating responses." *State v. Waggoner*, Montgomery App. No. 21245, 2006-Ohio-844, ¶ 14; *Strozier* at ¶ 20.

{¶ 16} "In *Innis*, the defendant was arrested for an armed robbery involving a shotgun; at the time of his arrest, Innis was unarmed. Innis was given *Miranda* warnings, and he invoked his right to speak with a lawyer. While three officers

transported Innis to the police station, one of the officers began talking to another officer regarding the missing shotgun. One of the officers stated that there were 'a lot of handicapped children running around in this area' because a school for such children was nearby, and 'God forbid one of them might find a weapon with shells and they might hurt themselves.' With that, Innis insisted on showing the officers where he had concealed the shotgun. He subsequently moved to suppress that evidence. The trial and appellate courts denied the motion.

{¶ 17} "On review, the United States Supreme Court held that the statements the officers made were not ones which they should have known were reasonably likely to elicit an incriminating response. There was no express questioning, and nothing in the record indicated that the officers were aware that the defendant was 'particularly susceptible to an appeal to his conscience concerning the safety of handicapped children,' or that he was 'unusually disoriented or upset' when the statements were made. Though some 'subtle compulsion' was present, the Court concluded that the officers' words did not constitute interrogation." *State v. Fair*, Montgomery App. No. 24120, 2011-Ohio-3330.

{¶ 18} In *State v. Waggoner*, Montgomery App. No. 21245, 2006-Ohio-844, the defendant and his companions had been ordered out of the vehicle, and the defendant had been arrested on an outstanding warrant. Under those circumstances, we found that the record did not support a finding that the arresting officer should have known that when he asked the defendant whether there was "any other property of his in the vehicle," he would have elicited an incriminating response from the defendant. Thus, we held that *Miranda* warnings were not required before

the officer questioned the defendant regarding any objects left in the vehicle.

{¶ 19} *Innis* and *Waggoner*, however, are clearly distinguishable from the facts present in the instant case. After the sedan had been stopped and the occupants removed from the vehicle, Hoskins was placed by Officer Phillips face down on the ground with his feet pointing towards the vehicle. All of the vehicle's doors were open as well. The officers had no particularized basis upon which to suspect that any of the occupants of the vehicle were armed. When he began questioning the suspect that he removed from the front passenger seat, Officer MacGill inquired in a "loud, controlling voice" about weapons. At that point, Officer Phillips testified that he had not spoken to Hoskins, who was lying face down on the ground. Officer Phillips, however, admitted that he could clearly hear Officer MacGill's question on the other side of the vehicle. It is reasonable to find that under these circumstances, as the trial court concluded, Hoskins thought that he was being asked a question by Officer MacGill, and he felt compelled to answer. We also accept the trial court's finding that Officer MacGill should have been aware that his question was reasonably likely to elicit an incriminating response from Hoskins who was in such close proximity facedown. Thus, Hoskins's statement regarding the handgun in his possession was obtained in violation of his *Miranda* rights. Accordingly, the trial court did not err when it sustained Hoskins's motion to suppress.

{¶ 20} The state's sole assignment of error is overruled.

III

{¶ 21} The state's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

Judgment affirmed.

F ROELICH, J., concurs.

H ALL, J., dissents.

_____

F ROELICH, Judge, concurring.

{¶ 22} I concur in the judgment to affirm the decision of the trial court, all the while not disagreeing with some of the statements in the dissent. This was an extremely fact-sensitive situation and the trial court made specific findings that I cannot say are, as a matter of law, not supported by the record.

_____

H ALL, Judge, dissenting.

{¶ 23} When several occupants are removed from a confirmed stolen automobile, I fail to see how an officer's loud question "Do you have any knives, weapons, guns or anything like that in your possession?" directed to a removed front-seat passenger on one side of the vehicle, which was apparently overheard by a rear driver's side passenger, on the other side of the vehicle, constitutes custodial interrogation of the rear driver's side passenger. I would reverse the trial court's granting of the motion to suppress Hoskins's statement that he had a firearm in his possession.

{¶ 24} In determining whether Hoskins was "interrogated," the trial court

indicated that "the focus must be primarily upon the perceptions of Hoskins." The trial court then concluded that "Hoskins reasonably believed the question had been posed to him * * *." Id. The problem with this conclusion is that it is speculation. Hoskins did not testify at the motion hearing. What he "reasonably believed" is not supported by the record.

{¶ 25} I am also of the opinion that the testimony of the officers that they were stopping a confirmed stolen vehicle, after dark and in an area where officers deal with violent gang members and where "[s]tolen vehicles, lot of times, have people that are armed or with any various types of weapons," supports the notion that the officers could constitutionally pat down each of the occupants of the vehicle. Stopping a stolen vehicle is not an ordinary traffic stop. It is not the time for hesitation or polite discourse. The great likelihood is that a felony is being committed by one, and perhaps all, of the occupants. The stop is fraught with danger with great potential for flight and risk of injury or even death. However, in this case, the state, erroneously in my opinion, conceded that the officers did not have the right to pat down the occupants of the car. Thus, I do not include the public-safety exception to *Miranda* as part of the basis of my disagreement.

. . . . . . . . . .