[Cite as *State v. Turner*, 2016-Ohio-7983.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | C.A. CASE NO. 27065 |
| | : | |
| v. | : | T.C. NO. 15CR2989 |
| | : | |
| LANCE TURNER | : | (Criminal appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ____2nd____ day of _____December_____, 2016.

. . . . . . . . . . .

HEATHER N. JANS, Atty. Reg. No. 0084470, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellant

TINA M. McFALL, Atty. Reg. No. 0082586, 117 South Main Street, Suite 400, Dayton, Ohio 45422
        Attorney for Defendant-Appellee

. . . . . . . . . . . .

DONOVAN, P.J.

{¶ 1} Plaintiff-appellant the State of Ohio appeals a decision of the Montgomery Court of Common Pleas, Criminal Division, granting defendant-appellee Lance G. Turner's motion to suppress in a decision issued on March 23, 2016. The State filed a timely notice of appeal with this Court on March 30, 2016.

{¶ 2} The incident which forms the basis for the instant appeal occurred on September 18, 2015, when Dayton Police Detectives Timothy Braun and Patrick Bell were patrolling the area of James H. McGee Boulevard near North Gettysburg Avenue in Dayton, Ohio. Detectives Braun and Bell were dressed in casual civilian attire and were patrolling the area in an unmarked vehicle. While patrolling, Det. Braun testified that he observed a Ford Focus being driven by a male talking on a cellular telephone. The detectives ran the vehicle's license plates through their database and discovered that the vehicle was registered to a female from Brookville, Ohio. Based upon their observations, the detectives began following the vehicle.

{¶ 3} After following the vehicle for a short time, Det. Braun observed the driver of the vehicle, later identified as Turner, stop the vehicle and park on the side of Prescott Avenue. After a couple of minutes, Det. Braun testified that Turner turned the vehicle around and parked on the other side of the street. A few more minutes passed, and Det. Braun observed a "tan-ish" colored vehicle pull up behind Turner and stop. Thereafter, a male exited the tan vehicle and stopped to talk to the driver of another vehicle that was driving down the road at the same time. After speaking with the other driver for approximately five seconds, the individual began walking toward the driver's side door of Turner's vehicle. When he reached the vehicle, the individual leaned over and handed Turner a white envelope and quickly walked away. Det. Braun testified that he did not observe Turner hand anything back to the man in exchange for the envelope.

{¶ 4} Turner immediately drove away after receiving the envelope, and the detectives followed as he turned down several streets. Turner then drove the vehicle into an alley and parked behind an apartment building. The detectives entered the alley

from the opposite direction and parked their vehicle pointing in the same direction as Turner's vehicle. Det. Braun testified that his unmarked vehicle was parked with the front passenger door approximately five to six feet from the front driver's side door of Turner's vehicle. Det. Braun exited his vehicle and approached Turner who was sitting in the driver's seat of his vehicle. Det. Braun testified that he grabbed his badge which was displayed around his neck and identified himself to Turner as "police."

{¶ 5} Det. Braun testified that he observed that Turner was holding the envelope which contained a plastic baggie. Once Turner became aware of Det. Braun's presence, he immediately placed the envelope containing the plastic baggie into the glove compartment and closed it. At that point, Det. Braun also observed that Turner had a paper towel in his hand with blood on it, but the origin of the blood was not apparent. Det. Braun testified that he opened the driver's door and ordered Turner out of the vehicle. Det. Braun testified that he grabbed Turner's right wrist, and Det. Bell grabbed Turner's left wrist when he stepped out of the vehicle. Because of the presence of blood on the towel, Det. Braun asked Turner if he had a needle on his person in order to prevent being injured. Because Turner was acting as if he might try to flee on foot, Det. Braun placed him in handcuffs.

{¶ 6} Once Turner had been restrained, Det. Braun explained what he and Det. Bell had observed while following him. Turner responded that he would help the detectives by giving them the name of the individual from whom he bought the drugs. Det. Braun testified that he did not ask Turner any questions. However, Det. Braun testified that Turner made several incriminating statements without being asked. At no point during his interaction with Detectives Braun and Bell was Turner provided with his

*Miranda* warnings.

{¶ 7} While Det. Braun and Turner were talking, Det. Bell located the envelope containing the plastic baggie in the suspect vehicle's glove compartment. Both cocaine and heroin were found inside the baggie. After finding the drugs, Det. Bell asked Turner for permission to search his cellular telephone, which he provided. The vehicle was searched, but no other contraband or paraphernalia was found. Rather than having the vehicle towed, the police permitted the female owner of the vehicle to come and pick the car up from the scene. Turner was thereafter transported to jail and charged with possession of heroin and cocaine.

{¶ 8} On December 7, 2015, Turner was indicted for one count of possession of heroin and one count of possession of cocaine. At his arraignment on December 15, 2015, Turner stood mute, and the trial court entered a plea of not guilty on his behalf.

{¶ 9} Turner filed a motion to suppress on December 30, 2015, arguing that any physical evidence recovered from the vehicle and the statements that he made at the scene should be suppressed because he was arrested without probable cause and he was never *Mirandized* by the detectives.

{¶ 10} A hearing was held before the trial court on Turner's motion to suppress on February 11, 2016. Det. Braun was the only witness to testify, and the only exhibit entered into evidence was a three-page police report authored by Det. Braun. In a decision issued on March 23, 2016, the trial court initially found that Det. Braun had a reasonable, articulable suspicion that Turner was engaged in illegal drug activity. The trial court further found that Turner was immediately under arrest upon being removed from the vehicle. However, the trial court found that the facts up to that point in the

investigation did not rise to the level of probable cause necessary to arrest Tuner. Thus, because Turner's arrest was unlawful, the detectives' subsequent search of the vehicle's glove compartment was not justified as a search incident to his arrest, nor was the contraband subject to the plain view exception. The trial court also stated that the automobile exception to the search warrant requirement had no applicability because the detectives lacked probable cause to search the vehicle. Based on its findings, the trial court granted Turner's motion to suppress, excluding the drugs and any statements made by Turner. Additionally, the trial court found that Turner's statements were excluded because he was not *Mirandized.*

{¶ 11} It from this judgment that the State now appeals.

{¶ 12} Because they are interrelated, the State's first and second assignments of error will be discussed together as follows:

{¶ 13} "THE TRIAL COURT ERRED WHEN IT FOUND THAT TURNER WAS ILLEGALLY ARRESTED IMMEDIATLEY UPON REMOVAL FROM THE VEHICLE AND SUPPRESSED ALL EVIDENCE AS FRUIT OF THE POISONOUS TREE."

{¶ 14} "THE TRIAL COURT ERRED WHEN IT SUSTAINED TURNER'S MOTION TO SUPPRESS BECAUSE THERE WAS SUFFICIENT PROBABLE CAUSE TO SUPPORT THE SEARCH OF THE GLOVE COMPARTMENT."

{¶ 15} In both of its assignments, the State essentially contends that the trial court erred when it found that Detectives Braun and Bell lacked sufficient probable cause to arrest Turner and perform a search of the vehicle without a warrant.

{¶ 16} As this Court has previously noted:

"Appellate courts give great deference to the factual findings of the

trier of facts. (Internal citations omitted). At a suppression hearing, the trial court serves as the trier of fact, and must judge the credibility of witnesses and the weight of the evidence. (Internal citations omitted). The trial court is in the best position to resolve questions of fact and evaluate witness credibility. (Internal citations omitted). In reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's factual findings, relies on the trial court's ability to assess the credibility of witnesses, and independently determines whether the trial court applied the proper legal standard to the facts as found. (Internal citations omitted). An appellate court is bound to accept the trial court's factual findings as long as they are supported by competent, credible evidence."

*State v. Purser,* 2d Dist. Greene No. 2006 CA 14, 2007–Ohio–192, ¶ 11, quoting *State v. Hurt,* 2d Dist. Montgomery No. 21009, 2006–Ohio–990, ¶ 16.

{¶ 17} Initially, we note that the only witness who testified at the hearing held on Turner's motion to suppress was Det. Braun. The trial court found the detective's testimony to be credible and adopted it as the court's factual findings.

{¶ 18} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution protect individuals from unreasonable searches and seizures. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Pressley,* 2d Dist. Montgomery No. 24852, 2012–Ohio–4083, ¶ 18. Under applicable legal standards, the State has the burden of showing the validity of a warrantless search, because warrantless searches are " 'per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well delineated exceptions.' " *State*

*v. Hilton,* 2d Dist. Champaign No. 08–CA–18, 2009–Ohio–5744, ¶ 21–22, citing *Xenia v. Wallace,* 37 Ohio St.3d 216, 218, 524 N.E.2d 889 (1988).   Exigent circumstances are a well-established exception to the Fourth Amendment's warrant requirement. *State v. Andrews,* 177 Ohio App.3d 593, 2008–Ohio–3993, 895 N.E.2d 585, ¶ 23 (11th Dist.); *State v. Berry,* 167 Ohio App.3d 206, 2006–Ohio–3035, 854 N.E.2d 558, ¶ 12 (2d Dist.).

{¶ 19} "Probable cause to arrest exists when a reasonably prudent person would believe that the person to be arrested has committed a crime."   *State v. Adams,* 2d Dist. Montgomery No. 24184, 2011–Ohio–4008, ¶ 7.   "[P]robable cause is a concept that must be based on the totality of the circumstances, because it 'deals with probabilities – the factual and practical nontechnical considerations of everyday life on which reasonable and prudent men act.' "   (Citations omitted.)   *State v. Etherington,* 172 Ohio App.3d 756, 2007–Ohio–4097, 876 N.E.2d 1285, ¶ 20 (2d Dist.).

> In the abstract, it means a reasonable basis for a particularized belief of guilt constructed from the totality of the circumstances. * * * A trial court will decide whether probable cause exists based principally on the historical facts, and "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause."

*State v. Huber*, 2d Dist. Clark No. 07–CA–88, 2009–Ohio–1636, ¶ 12 (*judgment vacated on other grounds*, 2015-Ohio-5301), citing *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

{¶ 20} } We note that the State obviously does not dispute the trial court's initial determination that Det. Braun had a reasonable and articulable suspicion that Turner was engaged in illegal drug activity.   The State, however, does challenge the trial court's

finding that Turner was immediately arrested upon being removed from the vehicle and that the facts did not support a finding of probable cause for arrest, thereby rendering his continued detention unlawful. We agree with the trial court that the police actions in this case constituted the functional equivalent of a formal arrest, since Turner was deprived of his freedom of action in a significant way. *See, e.g., State v. Petitjean,* 140 Ohio App.3d 517, 523, 748 N.E.2d 133 (2d Dist.2000). Thus, for purposes of this case, it matters not whether we refer to the situation as a "detention" or an "arrest."

{¶ 21} Upon following Turner into the alleyway where he had parked his vehicle after engaging in a suspected illegal drug transaction, Det. Braun testified that he immediately exited his unmarked vehicle and approached Turner who was sitting in the driver's seat of his vehicle. Det. Braun testified that he grabbed his badge which was displayed around his neck and identified himself to Turner as "police." Det. Braun further testified that he observed that Turner was holding the envelope he received from the unidentified male which contained a plastic baggie. Det. Braun testified that the type of plastic baggie he observed was a popular way that narcotics are packaged and purchased in illegal drug transactions. Additionally, as soon as Turner became aware of Det. Braun's presence, he immediately placed the envelope containing the plastic baggie into the glove compartment and closed it. Furthermore, Det. Braun also observed that Turner had a paper towel in his hand with blood on it, but the origin of the blood was not apparent, suggesting that he had recently attempted to inject drugs. Det. Braun testified in his experience, drug abusers oftentimes have needles in their possession which could have explained the blood on the towel in Turner's hand.

{¶ 22} Under the well-established automobile exception to the Fourth

Amendment's warrant requirement, police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband, and exigent circumstances necessitate a search or seizure. *State v. Mills,* 62 Ohio St.3d 357, 367, 582 N.E.2d 972 (1992); *Chambers v. Maroney,* 399 U.S. 42, 48, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). A vehicle's mobility is the traditional exigency for this exception to the warrant requirement. *Mills* at 367; *California v. Carney,* 471 U.S. 386, 393, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment * * * permits police to search the vehicle without more." *Pennsylvania v. Labron,* 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996). The automobile exception does not have a "separate exigency requirement" beyond the vehicle's mobility. *Maryland v. Dyson,* 527 U.S. 465, 467, 119 S.Ct. 2013, 144 L.E.2d 442 (1999). Moreover, "[t]he immobilization of the vehicle or low probability of its being moved or evidence being destroyed does not remove the officers' justification to conduct a search pursuant to the automobile exception." *State v. Russell,* 2d Dist. Montgomery No. 19901, 2004–Ohio–1700, ¶ 34.

{¶ 23} In the instant case, the vehicle driven by Turner was parked in a public alleyway and was readily mobile at the time of the stop. Thus, we conclude that exigent circumstances existed here because the vehicle was readily mobile at the time of the stop by the detectives. Therefore, whether the search of the vehicle was valid turns on the issue of whether probable cause existed.

{¶ 24} Probable cause is "a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction." *State v. Kessler*, 53 Ohio St.2d 204, 208, 373 N.E.2d

1252 (1978), citing *Carroll v. United States*, 267 U.S. 132, 149, 45 S.Ct. 280, 69 L.Ed. 543 (1925). "The police must have 'probable cause' to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search." *Id.,* citing *Dyke v. Taylor Implement Mfg. Co.*, 391 U.S. 216, 221, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968). "Furtive movements alone are not sufficient to justify the search of an automobile without a warrant. However, where a furtive movement has been made by occupants of a vehicle in response to the approach of police officers, the addition of other factors may give rise to a finding of probable cause to search the vehicle." (Citation omitted). *Id.* at 208–209.

**{¶ 25}** Indeed, there was a furtive movement made by Turner when he placed the envelope containing the plastic baggie in the glove compartment. As discussed above, other factors also existed. Other factors present in addition to the furtive movement include all of the observations made by Detectives Braun and Bell after they began following Turner, including the suspected drug transaction with the unidentified male on Prescott Avenue, the bloody paper towel in Turner's hand, and the plastic baggie inside the envelope observed by Det. Braun. Det. Braun also testified that he had been employed by the Dayton Police Department for approximately twenty years and had been a police officer performing drug investigations since 1988. In light of the other factors that existed, in addition to the furtive movement by Turner, we conclude that probable cause existed for the detectives to search the glove compartment where the envelope was placed. It was reasonable for Det. Braun to believe that, based upon the totality of the circumstances, Turner placed the envelope in the glove compartment in order to hide evidence that he had just participated in an illegal drug transaction. Therefore, we

conclude that the trial court erred when it found that the automobile exception to the Fourth Amendment's warrant requirement did not apply in the instant case. Based on the totality of the circumstances, Detectives Braun and Bell clearly had probable cause to search the vehicle for illegal contraband, and the drugs found in the baggie inside the envelope placed in the glove compartment by Turner were not subject to suppression.

**{¶ 26}** Upon review, however, we agree with the trial court that any incriminating statements made by Turner to Detectives Braun and Bell after being taken into custody at the scene should be suppressed because he was not given his *Miranda* warnings. Failure to give *Miranda* warnings when required creates a presumption of compulsion that renders any inculpatory statement a defendant made subject to suppression on a motion filed by the defendant. *State v. Hoskins*, 197 Ohio App.3d 635, 2012-Ohio-25, 968 N.E.2d 544, ¶ 12 (2d Dist.). Additionally, we find that the statements made by Det. Braun to Turner regarding his observations constituted a form of police interrogation that he should have known were reasonably likely to elicit an incriminating response from Turner. *Id.* at ¶ 15. The fact that Turner was not subject to "express questioning" by Det. Braun is immaterial to our analysis. *See Rhode Island v. Innis,* 446 U.S. 291, 298, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The *Innis* court read the term "interrogation" more broadly, to also include the more subtle "techniques of persuasion" sometimes employed by police officers that do not rise to the level of express questioning, but which also can be extremely coercive in some situations. *Id.,* 446 U.S. at 299–300, 100 S.Ct. at 1689, 64 L.Ed.2d at 306–307. By making statements regarding all the observations he made, Det. Braun gave Turner the impression that he had no alternative but to admit his wrongdoing in an effort to possibly mitigate his punishment. This tactic by Det. Braun was inherently

coercive and constituted an interrogation for the purposes of a *Miranda* analysis. Accordingly, the inculpatory statements made by Turner as a result of comments made to him by Det. Braun were properly excluded by the trial court.

{¶ 27} The State's first and second assignments of error are sustained.

{¶ 28} The State's first and second assignments of error having been sustained, the judgment of the trial court is reversed in part and affirmed in part, and this matter is remanded for proceedings consistent with this opinion.

. . . . . . . . . .

FAIN, J., concurs.

WELBAUM, J., concurring in part and dissenting in part:

{¶ 29} While I agree with most of the majority opinion, I very respectfully dissent from the decision to affirm the trial court's order suppressing the statements of Appellant. In my opinion, the statements were not the result of police interrogation or its functional equivalent as expressed by *Rhode Island v. Innis*, 446 U.S. 291, 298, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). "[T]he heart of the [interrogation] inquiry focuses on police coercion, and whether the suspect has been compelled to speak by that coercion." *State v. Tucker*, 81 Ohio St.3d 431, 436, 692 N.E.2d 171 (1998).

{¶ 30} As noted in the majority opinion, Turner was subjected to the functional equivalent of an arrest under Fifth Amendment *Miranda* standards and was not advised of the *Miranda* warnings. However, Det. Braun testified that he "didn't see a point in asking [Turner] questions because [he] observed everything." Suppression Hearing Trans. (Feb. 11, 2016), p. 18-19. Once Turner had been restrained, Det. Braun explained to Turner that he and Det. Bell had "watched him from beginning to end." *Id.*

at 19. Det. Braun further explained that he had observed Turner from the time he was on the phone and then discussed with Turner what he observed, step by step, including Turner buying drugs. *Id.* at 18-19. Although no questions were asked, Turner responded that he would help the detectives by giving them the name of the person who sold him the drugs, and then Turner made several incriminating statements. *Id.* at 19.

{¶ 31} The trial court found Det. Braun's testimony credible and adopted his testimony as the court's factual findings. Det. Braun testified that he told Turner that he had just watched him buy drugs because he wanted to "tell the person why they're going to jail." *Id.* at 45. Det. Braun denied that the purpose behind telling Turner this information was an attempt to have Turner agree with what he observed to elicit an admission. Det. Braun testified that he did not need Turner to agree with him. *Id.* Even if Det. Braun had hoped for an admission it would not be determinative. " 'Officers do not interrogate a suspect simply by hoping that he will incriminate himself.' " *State v. Guysinger*, 4th Dist. Ross No. 11CA3251, 2012-Ohio-4169, ¶ 15, quoting *Arizona v. Mauro*, 481 U.S. 520, 529, 107 S.Ct. 1931, 95 L.Ed.2d 458 (1987).

{¶ 32} Recent Ohio and federal cases have held that informing defendants of the evidence against them does not necessarily amount to an interrogation and may instead " 'contribute to the intelligent exercise of [the defendant's] judgment regarding what course of conduct to follow.' " *Id.* at ¶ 22, quoting *United States v. Payne*, 954 F.2d 199, 202 (4th Cir.1992). (Other citation omitted.)

{¶ 33} Det. Braun's statements to Turner are significantly less provocative than statements in other cases that were not found to be the functional equivalent of an interrogation. For example, in *Guysinger*, the court found that a deputy's statements to

the defendant regarding the discovery of a firearm did not constitute an interrogation under *Innis* where the deputy provided the following testimony regarding his statements:

"Deputy Gallagher: I went out and I spoke with Mr. Guysinger who was in the cruiser and I told him what had occurred with the dog and that we believed that the firearm that was found was the one that was used in the commission of this crime according to the description given by the victim.

"[State]: Did he say anything to you at that point in time?

"Deputy Gallagher: He just kind of sat and was kind of quiet and I told him that it was more than likely in his best interest to start thinking about the situation and how things were going." * * *

Deputy Gallagher also testified that "these were statements, these weren't questions I made to [Guysinger], there was a statement I made when the firearm was found and that he needed, it was going to be in his best interest of benefit to him [sic] if he started to think about these circumstances and situation of the case. And basically, just be honest about the situation." * * *

*Guysinger,* 4th Dist. Ross No. 11CA3251, 2012-Ohio-4169 at ¶ 17-20.

**{¶ 34}** In finding no interrogation, the *Guysinger* court relied on numerous federal cases that involved facts arguably more coercive than the statement made by Det. Braun. Specifically, the *Guysinger* court stated:

Courts have held that confronting a defendant with inculpatory evidence does not necessarily amount to interrogation. *See, e.g., U.S. v.*

*Payne,* 954 F.2d 199, 203 (4th Cir.1992). In *Payne,* an FBI agent told the defendant, "They found a gun at your house[,]" and the defendant responded, "I just had it for my protection." *Id.* at 201. The defendant was later convicted on a weapons charge. *Id.* In holding that the agent's statement was not an interrogation, the court noted that "the *Innis* [446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297] definition of interrogation is not so broad as to capture within *Miranda's* reach all declaratory statements by police officers concerning the nature of the charges against the suspect and the evidence relating to those charges." *Id.* at 202. Additionally, the court noted that "[i]nformation about the evidence against a suspect may also contribute to the intelligent exercise of his judgment regarding what course of conduct to follow." *Id. See also U.S. v. Allen,* 247 F.3d 741, 765 (8th Cir.2001) ("[I]nforming Allen of the results of the lineup did not amount to the functional equivalent of interrogation for purposes of the Fifth Amendment."), *vacated on other grounds, Allen v. U.S.,* 536 U.S. 953, 122 S.Ct. 2653, 153 L.Ed.2d 830 (2002); *Easley v. Frey,* 433 F.3d 969, 974 (7th Cir.2006) ("[W]e do not believe that [the investigating officer's] statement regarding the evidence and the possible consequences of the charges Easley faced rose to the level of interrogation[.]"); *Shedelbower v. Estelle,* 885 F.2d 570, 572–573 (9th Cir.1989) (holding that interrogation did not occur where police truthfully told defendant that co-defendant was also in custody and falsely stated that the victim had identified defendant as a perpetrator).

*Guysinge*r at ¶ 22.

**{¶ 35}** One of the case examples in *Guysinger* worth discussing is *Easley v. Frey*, 433 F.3d 969 (7th Cir.2006). In *Easley*, the issue was whether the defendant's incriminating statement was made in response to an interrogation as a result of the investigating officer saying the following:

> "I understand you have been given your rights and you don't wish to say anything, and I do not wish to ask you any questions at this time, but I want to advised (sic) you what lies ahead." At that point in time, I advised him that we had inmate testimony that indicates that he and another individual were the hitters or perpetrators of the murder of Superintendent Taylor and that even though he was currently institutionalized on a serious matter this was more serious in the fact that it was a capital crime and if convicted, could be subject to the death penalty.

*Easley* at 971.

**{¶ 36}** The *Easley* court held that the defendant was not subjected to an interrogation and explained its holding as follows:

> In this case, we do not believe that [the investigating officer's] statement regarding the evidence and the possible consequences of the charges Easley faced rose to the level of interrogation under existing United States Supreme Court precedent. As the Fourth Circuit observed in *United States v. Payne*, "information about the evidence against a suspect may also contribute to the intelligent exercise of his judgment regarding what course of conduct to follow." 954 F.2d 199, 202 (4th Cir.1992) (citation

omitted); *accord United States v. Moreno-Flores*, 33 F.3d 1164, 1169-70 (9th Cir.1994) (fact that police statements to suspect "may have struck a responsive chord" insufficient to find them functional equivalent of interrogation). The defendant in *Payne* invoked his right to counsel. Later, officers notified him of the charges he faced. The Fourth Circuit determined that "statements by law enforcement officials to a suspect regarding the nature of the evidence against the suspect [do not] constitute interrogation as a matter of law." The court declined to reverse the trial court's admission of the defendant's statement because it could not "conclude that Agent Martin 'should have known' that her statement, which was the only discussion of the charges or evidence against appellant, was 'reasonably likely to elicit an incriminating response.' " Like the Fourth Circuit, we do not believe that the provision of information, even if its weight might move a suspect to speak, amounts to an impermissible "psychological ploy." We have cited *Payne*'s reasoning approvingly, *see United States v. Jackson*, 189 F.3d 502, 510 (7th Cir.1999), and *United States v. Cooper*, 19 F.3d 1154, 1163 (7th Cir.1994), and do so again today.

Easley has not suggested that [the investigating officer's] statement was anything more than a matter-of-fact communication of the evidence against him and the potential punishment he faced. Accordingly, we are not persuaded to hold that the Illinois Supreme Court misapplied or acted contrary to United States Supreme Court precedent when it determined that [the investigating officer's] statement was not the equivalent of

interrogation. *See Jackson v. Frank*, 348 F.3d 658, 665 (7th Cir.2003) (determination by sister circuit consistent with state court determination "makes it more difficult to conclude" state court "unreasonably applied Supreme Court authority"). And, because it was not a form of interrogation, the statement did not transgress the investigators' duty to honor Easley's invocation of his right to remain silent.

*Easley* at 974.

{¶ 37} Based upon the cases cited above, I do not believe that Det. Braun's statements are the functional equivalent of an interrogation under *Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297, as there is no indication that Turner was compelled to speak by coercion. Therefore, I very respectfully dissent from the majority's decision affirming the suppression of Turner's statements.

. . . . . . . . . .

Copies mailed to:

Heather N. Jans
Tina M. McFall
Hon. Mary K. Wiseman